## COMMONWEALTH v. JUDGES OF QUARTER SESSIONS.

Where a new township was erected by the court out of a portion of an old one; an act of the General Assembly of the commonwealth, giving to the qualified voters of the said townships, the right and power to decide by ballot, whether the new township should be continued or annulled, is valid and constitutional.

The decision in Parker v. Commonwealth, 6 Barr, 507, "settled nothing more than that the General Assembly of the commonwealth could not delegate to the people a power to enact laws by the exercise of the ballot, affecting the property and binding the political and social rights of the citizens. But the erection of a township, or the creation of a new district for merely municipal purposes or convenience in the transaction of the public business, is in no degree similar to the exercise of law-making: the one being an exercise of sovereignty, the other, in its very nature, a subordinate function."

THIS was a petition, *ex relatione* Henry Phillippi, for a *mandamus*, to the Judges of the Court of Quarter Sessions of Lebanon county, to command them to appoint the relator constable of Washington township, Lebanon county, to which office he had been duly elected, upon the erection of the said township of Washington out of a portion of Bethel township, in said county, and to allow him to be sworn into office, or to show cause why a *peremptory mandamus* should not be issued, &c.

A *mandamus*, thereupon, issued out of this court, in accordance with the prayer of the relator.

The facts of the case are sufficiently admitted and stated, in the following return or answer of the court below:—

" The undersigned, Associate Judges of the Court of Quarter Sessions of the Peace, in and for the county of Lebanon, having been served with a *mandamus*, requiring us to administer to Henry Phillippi, who is alleged to be the constable of Washington town-

ship, elect, or allow to be administered to him the oath required by law, and also to allow to him all the rights and privileges pertaining to said office, as constable of Washington township, elect, or show cause to the contrary thereof, make the following return thereto :

"It is true, as stated in the *mandamus* referred to, that the records of the Supreme Court show that Washington township, in said county, was erected into a separate township, out of a portion of the township of Bethel, in said county.

"It is also true that the said Henry Phillippi was apparently elected to the office of constable, in and for the township of Washington, as appears in and by an election return, filed in our said Court of Quarter Sessions, purporting to be the election returns of the township of Washington, in and by which election return it also appears that said election was held at the public-house of Samuel Goshert, in the alleged township of Washington, on Friday, the 17th day of March, A. D. 1848. There remains filed, also, in our said court, the return of an election held at the public-house of William Sarge, in the township of Bethel, on Friday, the 17th day of March, A. D. 1848, in and by which return it appears that John Desh was elected to the office of constable, in and for the said township of Bethel, who was duly sworn in as constable of said township, at our April Sessions, 1848. The usual place of holding the election for said township of Bethel, is at the public-house of William Sarge, aforesaid.

"By the 13th section of the act of the legislature, of the 8th day of March, 1847, Pamph. Laws, 257, the right was given to the qualified voters of the townships of Bethel and Washington, to decide by ballot, on the erection of Washington township. That, in pursuance of said act, the qualified voters of said townships did, on the 19th day of March, 1847, hold an election for that purpose; the result of which was, two hundred and nine votes against the erection of Washington township, and eighty-two votes in favour thereof: all which records form part of our answer, and are to this return annexed.

"On the 10th day of April, 1847, another petition was presented to our said court, signed by thirty-four individuals, all residing in the district called Washington township, setting forth that the petitioners (who style themselves divers inhabitants of the township of Bethel) labour under great inconvenience in consequence of said township of Bethel being, from the peculiarity of its shape, too large to afford the inhabitants of said township the advantages which were intended to be conferred upon them by the creation of

minor subdivisions of that character, and praying the court to have the said township divided, according to a division-line set forth in their petition, and to appoint three commissioners to inquire into the propriety of dividing the township of Bethel, of said county, according to a division-line in said petition, particularly set forth. That we therefore appointed, on the 4th day of August, 1847, three commissioners, who, on the 1st day of November following, made their report in favour of the proposed division of Bethel township, according to the prayer of the petitioners; against which said report the following exceptions were filed, as well as reasons why the said township of Bethel should not be divided, to wit:—

"1. The Court of Quarter Sessions had no authority to entertain and receive the petition upon which the proceedings are founded, at the time the said petition was presented to the court:

"2. The division of said township is unnecessary, and burthensome to the inhabitants thereof generally.

"3. The division of said township would not be for the convenience of the inhabitants generally, but only for the convenience of a small portion of the inhabitants thereof.

"February 19th, 1848. Depositions were filed in relation to the division of said township, and to the report of the commissioners; which depositions were taken under rules of our court, and were read to the court, upon the argument of the exceptions.

"January 11th, 1848. The report of the commissioners was disapproved of by this court: all which records above referred to, are hereto annexed, and form part of our answer to the above writ.

"On the 10th day of April, 1848, Henry Phillippi appeared in open court, with unexceptionable security, and asked to be sworn in as constable of Washington township. The court unanimously refused to have the usual oath administered to the said Henry Phillippi, as constable of the alleged township of Washington; and in support of our refusal to administer the said oath to the said Henry Phillippi, the court, with this their answer, respectfully submit the records of our said court.

"Witness our hands, and the seal of our said court, this 29th day of May, 1848, in the absence of the honourable N. B. ELDRED, president of said court.

WILLIAM RANK,<br>HENRY CARMONY."

The question here was, whether the 13th section of the act of

Assembly of the 8th of March, 1847, Pamph. Laws, 257, giving to the qualified voters of the townships of Bethel and Washington, in Lebanon county, the right and power to decide by ballot, upon the continuance or annulment of the said township of Washington, which had been newly erected out of a portion of the said township of Bethel, by the Court of Quarter Sessions of Lebanon county, were constitutional or not.

*L. Kline* and *J. Weidman*, for relator.—The act of 8th March, 1847, was unconstitutional, and consequently the judicial decree creating the township remained in full force: Parker *v.* Commonwealth, 6 Barr, 507; Rice *v.* Foster, 7 Law Jour. 198.

The mode in which the election of constable was effected cannot be examined here. That can only be contested in the way provided by the acts of Assembly.

The act of 1840 does not apply to cases where townships are divided; it only applies to election districts.

*Ulrich*, contrà.—There were two legal objections to administering the usual oath of a constable to the relator, Henry Phillippi.

In the first place, he claimed to be the constable of Washington township, in the county of Lebanon, when in fact it was manifest from the record, that there was no such township in the county of Lebanon. Although, from a portion of the record returned to this court, it would appear as if the township of Bethel had at one time been divided into two separate townships; upon examination, however, of the whole record, it will appear that upon the final proceedings, the court refused to divide the township of Bethel and to erect the township of Washington into a separate township. The so called township of Washington was not organized; neither had it any legal existence at the time the legislature submitted the propriety of erecting the township of Washington to the voters in the township of Bethel. The result of the vote taken upon the division of Bethel township, clearly shows that the division of said township was unnecessary. Whether that election was constitutional or not, cannot affect the relator's case, for the inhabitants of Bethel township without exception, those opposed and in favour of the new township, acquiesced in that election, and in fact ratified it by their subsequent application for proceedings *de novo*.

The remaining objection to administering the official oath to the relator, was still stronger than the former; for it appeared by the several election returns, and from the records of the Court of Quar-

ter Sessions, that the election held in the so-called township of Washington, was an undue election and illegal, not having been held according to the 27th section of the act of 7th March, 1840, Purdon's Digest, 393. The court were bound to take notice of such undue election, and could not conscientiously administer the official oath to the relator.

*June* 28. BELL, J.—A new township called Washington having been erected out of the old township of Bethel, by commissioners appointed by the Court of Quarter Sessions of Lebanon county, the legislature, by the 13th section of the act of 8th March, 1847 (Pamph. Laws, 257), directed an election to be held within the townships of Bethel and Washington by the qualified voters, in order to determine by ballot, whether the new township should be continued or annulled. This question was to be determined by a majority of the votes polled. An election was accordingly held, and a majority of votes cast against the continuance of the new township. This result was duly returned to, and filed among the records of the court. The relator, Henry Phillippi, who was afterwards informally elected constable by the people residing within the territory of the proposed new township, claims that the act of 1847 is within the principle settled in Parker *v.* The Commonwealth, 6 Barr, 507, and therefore unconstitutional and void. But this position is founded in an entire misapprehension of the doctrine of that case. It settled nothing more than that the General Assembly of the commonwealth cannot delegate to the people a power to enact laws by the exercise of the ballot, affecting the property and binding the political and social rights of the citizens. But the erection of a township or the creation of a new district for merely municipal purposes, or convenience in the transaction of the public business, is in no degree similar to the exercise of law-making power. The one is an exercise of sovereignty, the other, in its very nature, a subordinate function. The latter, like the laying out of a public road or highway, or the erection of a bridge, may require the exercise of judgment and skill, but there is nothing either in the positive provisions of our constitution, or the genius of our institutions, which prohibits the action of other than the legislative bodies. Accordingly, at a very early day, the power of laying out roads and directing the building of county bridges was conferred upon the several Courts of Quarter Sessions, though still occasionally exercised by the legislature itself. So, too, by the act of 1834, the courts, acting through commissioners, are vested with the right to

erect new townships and divide old ones.    No one has ever doubted the constitutional right of the legislature to authorize the exercise of both these jurisdictions by the courts, because it has never been imagined that it bore any resemblance to the power of enacting laws.    Indeed, it is so entirely dissimilar, that an elaborate attempt to show the contrast would be a mere waste of words.    But if the legislature can authorize the courts to decide questions of this character, they can also authorize the people primarily to do so. The difficulty is simply as to the right to impart the power to act. If it can be given to a selected few, it may also be delegated to all the inhabitants of a district, unless positively prohibited.    The previous action of the court in the premises makes no difference.    The power of the legislature directly to repeal that action cannot be questioned, and that which they could do immediately may also be effected by the secondary means of a popular vote.

The statute which authorized the division by vote being thus shown to be constitutional, the refusal of the court below to swear the relator as constable of a township having no legal existence, was correct.

Peremptory mandamus refused.