Dalby v. Wolf and Palmer.

*Statement of corporation taxes paid by T. S. Espy, for the years, 1855, 1856, 1857, on the following described lands, to wit:*

E. ½ S. W. ¼ Sec. 34, T. 68, R. 4 — 81.

S. E. Cor. W. ½ S. W. ¼ T. 68, R. 4 — 16.

Plat lot No. 2, Sec. 3, T. 67, R. 4 — 7.

Paid for the above years, on said property,........$32 92

Interest on same to date,........................  7 91

                                                 $40 83

---

DALBY v. WOLF AND PALMER.

1. SWINE AND SHEEP: LAW CONSTITUTIONAL. Section 114 of the Code of 1851, and chapter 193 of the Laws of 1857, authorizing the people of the several counties of this State to decide by a majority vote to restrain swine and sheep from running at large, is not inconsistent with article 1, § 6, of the Constitution of 1857

2. SAME: PROCESS. It is not contemplated by chapter 193, Laws of 1857, that the officer executing it shall have a process to make a sale thereunder.

3. SECTION CONSTRUED. The second section of chapter 193 of the Laws of 1857 is retrospective in its operation, and applies as well to votes taken before, as after, its passage.

*Appeal from Jones District Court.*

SATURDAY, DECEMBER 6.

*Cutter & Stacy* for the appellant, relied upon *Santo et al.* v. *The State of Iowa,* 2 Iowa, 203.

*I. M. Preston & Son* for the appellee, cited *Geebrick* v. *The State of Iowa,* 5 Iowa, 491; *River* v. *Foster,* 4 Harr., 492; *Thorne* v. *Kramer,* 15 Barb., 112; *Bradley* v. *Baxter,* Id., 192.

WRIGHT, J.— Plaintiff declares in trespass for that defendants wrongfully took and drove away certain personal property, belonging to said plaintiff, of the value, &c. The second clause of the answer, justifying, avers that the county of Jones, on the first Monday in April, 1855, did, by a majority vote, on a question duly submitted, decide in favor of restraining swine and sheep from running at large; that after this, the property in question (swine) was found running at large, upon the premises of the defendant Palmer, who gave notice to his co-defendant Wolf, a constable, that Palmer took them into possession; and Wolf, after due notice, advertised and sold them. To this part of the answer, there was a demurrer, which was sustained, and defendants appeal.

The vote referred to, was taken under § 114 of the Code, which provides that the County Judge may submit to the people of his county the question, whether stock shall be permitted to run at large, or at what time it shall be prohibited. By the act of January 28, 1857, ch. 193, the

manner of enforcing this law, after an affirmative vote, is pointed out; and it was under this that defendants proceeded in selling this stock.

Plaintiff claims, that this law is in conflict with § 6, art. 1, of the Constitution, which declares, that " all laws of a general nature shall have a uniform operation; " and for the further reason, that it depends for its validity upon the vote of the people, and is not the expressed will of the legislature.

Neither of these positions is tenable. They utterly mistake the intention of the constitutional provision quoted, and misapprehend the scope and spirit of the decisions, in this and other States, which hold that the legislature cannot refer to the people the question whether a particular act shall become a law. In all the cases referred to, it will be found, that as in *Thorne* v. *Cramer*, 15 Barb., 112, and *Bradley* v. *Baxter and others*, Id., 112, the question submitted was, whether or not a proposed law should become operative. Thus, in the first case cited, it was provided by the statute, that " the electors shall determine, by ballot, at the annual election to be held in November next, whether this act shall, or not, become a law." If a majority voted against it, then it was to be null and void; if for it, then it was to take effect on a day named. And such legislation was expressly condemned, by this court, in *Santo* v. *The State*, 2 Iowa, 165, which was recognized and followed in *Geebrick* v. *The Same*, 5 Id., 491. The law in question, however, is not obnoxious to this objection. The popular will is expressed, under and by virtue of a law that is in force and effect, and the people neither make nor repeal it. They only determine whether a certain thing shall be done under the law, and not whether said law shall take effect. The law had full and absolute vitality, when it passed from the hands of the Legislature and the people, under the " rule of action " therein given for

their government, proceeded to act. The same rule — the same law — was given to all the people of the State, to all parts of it; the same method for taking the vote was presented for all the counties; the same penalties were attached. As a result of the vote, a different regulation, of a police nature might exist in one county from what existed in another; just as, under the same section (114), one county might determine, by a popular vote, that a higher rate of tax should be levied than that provided by the general law, when the county warrants were depreciated, while another voted against it. So it is in principle like the provision which submits the question, whether money should be borrowed to aid in the erection of public buildings. One county might decide in favor of such loan, while another rejected it; and yet the law, under which they vote, is operative, and in full effect. Not only so, but it gives a uniform rule to all the people, and all the counties, alike.

The case of *Geebrick* v. *The State, supra*, is principally relied upon to maintain this ruling. The writer of this opinion dissented from some of the views expressed in that case; and, without now examining it in detail, it is sufficient to say, that it cannot fairly be construed into an authority for declaring this vote invalid. The substance of that decision, when divested of some of its reasoning (not necessary to the decision of the cause), is "that a law can no more be repealed, than it can be made, by a vote of the people." As to this proposition, we entertain no doubt. But § 114 of the Code does not give the people the power, by their vote, to do either. It simply declares, that they may determine for themselves, in the several counties, whether a particular police regulation shall, or shall not, be adopted. The law is entirely complete, in all its parts; and whatever their vote, it still has operative force and

effect. The distinction, to our minds, is clear, broad and unquestionable.

The law does not contemplate that the officer shall have a *process* to make the sale contemplated. As he does not justify under a written process, therefore, there was none to attach to his plea of justification.

The second section of the act of 1857 is retrospective in its operation, and applies to votes taken before, as well as after, its passage.

Reversed.